Carly M. Roman (SBN 349895)
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
croman@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| **BRANDON JAMES**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BOSLEY, INC.**,<br><br>Defendant. | No. 2:26-cv-02278-WLH-KS<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## FIRST AMENDED CLASS ACTION COMPLAINT

1. Brandon James ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Bosley, Inc. ("Bosley" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

**PARTIES**

5. Plaintiff, Brandon James, is a natural person and a citizen of North Carolina where he intends to remain.

6. Defendant, Bosley, Inc., is a stock corporation, incorporated in Delaware and with its principal place of business at 9100 Wilshire Boulevard, East Tower Penthouse, Beverly Hills, California.

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because it is headquartered in California, regularly conducts business, and has sufficient minimum contacts in California.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**BACKGROUND**

***The Telephone Consumer Protection Act***

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

12. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

13. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

14. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(b)(3), (c)(5).

15. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

16. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18. The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

19. Entities may be vicariously liable for TCPA violations under common law theories of agency—including actual authority, apparent authority, and ratification. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). Thus, entities cannot circumvent the TCPA simply by directing third-parties to place the unlawful telephone calls.

20. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

21. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

22. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff Brandon James***

23. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

24. Plaintiff's residential telephone number is (937) 581-XXXX (the "telephone number").

25. The telephone number (937) 581-XXXX is Plaintiff's only telephone number. Plaintiff does not maintain a landline or any separate business telephone number.

26. To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on February 25, 2025. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

27. Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past fifteen (15) years.

28. During this time period, Plaintiff has maintained the cellular account in his own name and has been responsible for paying the bills associated with his telephone number.

29. Plaintiff uses his telephone number primarily for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments). Although Plaintiff's employer possesses his phone number, and Plaintiff occasionally uses his personal cellular phone while participating in an

internal, employer-assigned on-call rotation, the telephone number is not a business line and is not used for any business owned or operated by Plaintiff.

30. Plaintiff has never taken a business-related tax-deduction for his telephone number. While Plaintiff has received a modest stipend from his employer during limited on-call periods because he is occasionally required to use his personal cellular phone for work-related activity, the account remains maintained and billed in Plaintiff's own name, the stipend does not cover the full cost of service, and the number remains his personal line.

31. Plaintiff requested an appointment with Defendant in May 2019 and confirmed his appointment via text message on May 10, 2019, to telephone number 39664. But Plaintiff did not purchase services from Bosley, Inc.

***Defendant Engages in Telemarketing***

32. Defendant is the largest hair restoration practice in the United States and the recognized leader in the industry.[1] Defendant has locations spanning across 34 states nationwide.[2]

33. Simply put, Defendant sells hair restoration and transplant products and services.

---

[1] *About Bosley*, BOSLEY, https://www.bosley.com/about/ (last visited May 8, 2026).

[2] *Bosley Hair Restoration Locations*, BOSLEY, https://www.bosley.com/locations/ (last visited February 27, 2026).

34. A screenshot of Defendant's website is provided below.[3]




35. To sell its hair restoration and transplant products and services, Defendant engages in telemarketing campaigns.

36. Defendant has already received numerous complaints about its unlawful telemarketing practices.

---

[3] *Id.*

37. Screenshot of consumer complaints to the Better Business Bureau and on Yelp are provided below.[4]

**Date:** 01/26/2026

Continually calls even after you tell them to stop. Emails after you unsubscribe. Employees will not provide an ID number or last name. They will not allow you to have a record of who you spoke with. [redacted] the last year they have continually called me multiple times a day and will not stop.

**Bosley, Inc.**

**Date:** 01/27/2026

Feb 13, 2026

Asked for additional numbing several times as the procedure was very painful. I was ignored. I w promised remote consultation for future prescription refills and then they said they couldn't do

Afterwards I received repeated marketing calls and they would not stop when I told them t stop calling. Crappy company, bad employees, bait and switch with harassment.

Helpful 0 Thanks 0 Love this 0 Oh no 0

**Patient Services & Scheduling**

Business Owner

***Defendant Violated the TCPA***

38. As explained below, Defendant violated the TCPA numerous times.

---

[4] *Bosley, Inc.*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/ca/beverly-hills/profile/hair-replacement/bosley-inc-1216-13412 (last visited February 27, 2026); *Bosley Hair Restoration & Transplant*, YELP, https://www.yelp.com/biz/bosley-hair-restoration-and-transplant-beverly-hills (last visited May 8, 2026).

39. After Plaintiff's May 2019 appointment, Defendant began sending text messages to his cellular telephone from phone number 62461. These text messages were marketing Defendant's hair restoration and products and services.

40. On July 20, 2019, Plaintiff replied "STOP" to Defendant's telephone number 62461. Plaintiff received a response that he was unsubscribed from receiving text messages from Defendant. The text message stated:

> You have been unsubscribed. To received special offers, discounts and info on the latest hair restoration solutions, reply JOIN. Msg&DataRatesMayApply

41. On May 28, 2020, Defendant used the telephone number 203203 and sent a text message to Plaintiff's telephone number. The text message stated:

> Brandon, Welcome Back! Bosley is now open for both video and in-person consultations in select areas. Take advantage of our first-time-ever savings and finally make your hair restoration dream a reality. Schedule now by clicking https://bit.ly2zudtfr

42. The text message was "spoofed" to appear as though it originated from phone number 203203. "Spoofing" is a technique is used to conceal the true identity of the sender and unlawful nature of the text message.

43. On July 3, 2020, Defendant used the telephone number 203203 and sent another text message to Plaintiff's telephone number. The text message stated:

> Hi Brandon, July Savings start now! Lowest prices of the year on hair transplantation. These offers will not last. Click https://bit.ly2C8gWRx or call (888) 351-7356 and get started on the path to a fuller head of hair.

44. On July 31, 2020, Defendant used the telephone number 203203 and sent another text message to Plaintiff's telephone number. The text message stated:

> Brandon, August is Hair Loss Awareness Month. We have fantastic specials on many of our proven hair restoration solutions. Don't wait any longer, It's time to celebrate getting your hair back. Talk with a Bosley hair restoration specialist and find out what we can do for you. Free in-person and video consultations available. Click https://bit.ly/3glDOME or call 8883517356 to get started.

45. On July 31, 2020, Plaintiff responded "STOP" to Defendant's text message at the telephone number 203203.

46. Defendant sent a response to Plaintiff's request to opt out of receiving text messages. The text message stated:

> You have been unsubscribed. To receive special offers, discounts and info on the latest hair restoration solutions, reply JOIN. Msg&DataRatesApply

47. Despite Plaintiff's request and Defendant's assurance that it would stop sending text messages, on December 2, 2023, Defendant used the telephone number 203203 and sent a text message to Plaintiff's telephone number. The text message stated:

> Give Yourself The Gift of Hair This Holiday Season. Save up to 50% on a Bosley Hair Transplant and enjoy a fuller head of hair in 2024. Tap https://bit.ly/47WQdBa to schedule a private consultation.

48. On December 4, 2023, Defendant used the telephone number 203203 to send another text message to Plaintiff's telephone number. The text message stated:

> Holiday Special Alert! Save up to $1,500 on your hair transplant at Bosley when you take advantage of our limited-time Holiday Specials. Give yourself the gift of hair Tap here https://bit.ly/3T38wAy to schedule your consultation and to secure your discount. Act now! Offer expires 12/30/2023

49. On December 12, 2023, Defendant used the telephone number 203203 and sent a text message to Plaintiff's telephone number. The text message stated:

> BOSLEY: 'Tis the season for transformation! Take up to $1,500 off your hair transplant when you take advantage of our Holiday Specials Tap https://bit.ly/3RDknnL to schedule your free consultation and claim this offer now before it expires on 12/30/2023. Reply 'stop' to opt out

50. In another attempt to get Defendant to stop sending him text messages, on December 12, 2023, Plaintiff responded "STOP" to Defendant's text message at the telephone number 203203.

51. Defendant received a "STOP" text message from Plaintiff on or about December 12, 2023.

52. Despite Plaintiff's previous request for Defendant to stop contacting him, and his registration on the Do-Not-Call List on February 25, 2025, Defendant continued to solicit its hair restoration and transplant services.

53. On October 3, 2025, at 11:52 a.m., Defendant used the telephone number (323) 475-1434 and left a voicemail on Plaintiff's telephone number. The voicemail stated:

> Hi, this is Brittany from Bosley. Some time ago, you had a hair consultation with us and I wanted to update you on some exciting advancements. We're offering a free consultation, either in person or via video conference this week only. Plus, if you move forward with a procedure, you'll receive $2500 as part of our special offer. To secure your spot, call us today at (855) 650-0731. Thanks.

54. In other words, Defendant called Plaintiff's telephone number and attempted yet again to solicit Plaintiff to purchase its hair restoration and transplant products and services.

55. The call from Defendant was also "spoofed" to appear as though it originated from phone number (323) 475-1434.

56. On October 15, 2025, 4:22 p.m., Defendant used the telephone number (323) 880-1603 and left a voicemail on Plaintiff's telephone number. The voicemail stated:

> Hey, it's Brittany. You came in for a hair consultation a while back and I thought you'd be interested in our newest offer. Right now you can schedule a complimentary consultation either in person or through video conference and take advantage of a $2500 savings if you decide to move forward with treatment. Call us back at (855) 650-0731 and we'd be happy to get you set up.

57. On October 17, 2025, at 10:13 a.m., Defendant used the telephone number (323) 916-2310 and left a voicemail on Plaintiff's telephone number. The voicemail stated:

> Hey, it's Brittany. You came in for a consultation a while back and I thought you'd be interested in our newest offer right now. You can schedule a complementary

> consultation either in person or through video conference and take advantage of a $2,500 savings if you decide to move forward with treatment. Call us back at (855) 650-0731 and we'd be happy to get you set up.

58. The voicemails featured a crisp and articulate voice—which noticeably lacked the typical pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the voicemails in question used a prerecorded or artificial voice.

59. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

60. Defendant's October 2025 calls to Plaintiff demonstrate that it lacked adequate internal procedures to honor Plaintiff's December 12, 2023 do-not-call request.

61. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

62. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4)

within four years prior to the commencement of this litigation and up until the date of trial.

**Prerecorded Voice Class**: All persons in the United States (1) whose telephone number (2) received one or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period, (4) within four years prior to the commencement of this litigation and up until the date of trial, and (5) when the telephone call used a prerecorded or artificial voice.

**Internal Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers received two or more telephone calls from, or on behalf of, Defendant (2) during a 12-month period, (3) within four years prior to the commencement of this litigation and up until the date of trial, (4) and who had previously requested for the telephone calls to stop.

64. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

65. Plaintiff reserves the right to amend the class definition.

66. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

67. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

68. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

69. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

70. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

71. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

a. whether Defendant violated the TCPA;

b. whether Defendant violated the TCPA willfully and knowingly;

c. whether Plaintiff is entitled to statutory damages;

d. whether Plaintiff is entitled to treble damages;

e. whether Defendant should be enjoined from further TCPA violations.

72. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible

for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

73. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

74. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

75. Defendant violated the TCPA willfully or knowingly.

76. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

77. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

**<u>SECOND CAUSE OF ACTION</u>**

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Prerecorded Call Class)**

78. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

79. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Prerecorded Call Class while using a prerecorded and/or artificial voice.

80. Defendant violated the TCPA willfully or knowingly.

81. Plaintiff and Prerecorded Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

82. Plaintiff and Prerecorded Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Prerecorded Call Class Members.

**<u>THIRD CAUSE OF ACTION</u>**

**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Internal Do-Not-Call Registry Class)**

83. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

84. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request

> not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

85. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

86. Plaintiff and the Internal Do-Not-Call Class Members made requests to Defendant not to receive telemarketing calls from Defendant.

87. Defendant failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to call Plaintiff and the Internal Do-Not-Call Class Members to harass them into making purchases from Defendant.

88. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) institute procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) implement a written policy, available upon demand, for maintaining a do-not-call list; and (3) train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

89. Plaintiff and the Internal Do-Not-Call Class Members are informed and believe that Defendant (1) has not instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) has not implemented a written policy, available upon demand, for maintaining a do-not-call list; and (3) does not train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

90. The details and specific facts regarding Defendant's failure to maintain the required policies, implement the required procedures, and train its personnel regarding the same, are solely within Defendant's knowledge and possession.

91. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations,

except for emergency purposes, to the Plaintiff and the Internal Do-Not-Call Class despite having asked Defendant to cease its telephonic solicitations.

92. Defendant violated the TCPA willfully or knowingly.

93. Plaintiff and Internal Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

94. Plaintiff and Internal Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Internal Do-Not-Call Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

*[Counsel signature to follow on next page.]*

Respectfully submitted this 8th day of May, 2026.


<u>*/s/ Carly M. Roman*</u>
Carly M. Roman (SBN 349895)
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
croman@straussborrelli.com
agunem@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*

# CERTIFICATE OF SERVICE

I, Carly M. Roman, hereby certify that on May 8, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 8th day of May, 2026.

*/s/ Carly M. Roman*
Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
croman@straussborrelli.com